CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
NOV 20 2023
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TORIMIKA HAIRSTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00011 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NILIT AMERICA, INC., | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendant. | ) | |

When Plaintiff Torimika Hairston filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about October 4, 2022, claiming that she had been discriminated against by her employer, Defendant Nilit America, Inc. ("Nilit"), she expressly requested that the EEOC forward her complaint with the "Virginia Council on Human Rights ["VOCR"[1]] and that the charge be investigated by both agencies and any other federal or state agencies which may have jurisdiction." (Am. Compl. Ex. 1 [ECF No. 22].) In response to this litigation, Nilit sent a Freedom of Information Act request to the VOCR, seeking the VOCR's entire case file related to Hairston's claim of discrimination. Based on the VOCR's response, Nilit argues that Hairston did not initiate proceedings with the VOCR after all, and that she is therefore barred from bringing a state-law claim of discrimination against Nilit.

---

[1] For reasons that escape the court's understanding, there does not appear to be a universal, accepted abbreviation for the Virginia Office of Civil Rights, which Hairston referred to as the Virginia Council on Human Rights here. It is alternately referred to, in internal filings, workshare agreements, and public court opinions, as "OCR," "VOCR," "VCHR", and "FEPA" (for Fair Employment Practice Agency, a catch-all term for state agencies charged with investigating claims of discrimination under state law). For the sake of consistency, the court adopts "VOCR," and internal edits to quoted documents are set off by brackets, *e.g.*, "[VOCR]".

Because the filing of a charge with the EEOC automatically initiated charges with the VOCR—regardless of the EEOC's apparent failure to transmit those charges to the VOCR or the VOCR's poor record-keeping or its failure to fulfill its statutory obligation to notify and investigate—Hairston timely initiated proceedings with the VOCR and properly exhausted her state-law remedies. Hairston did what the law required; the remainder of the failures Nilit cites were failures by the EEOC and VOCR to comply with their statutory obligations. This governmental inefficacy will not preclude Hairston from seeking redress for her state-law claim in federal court.

## I. BACKGROUND

The facts underlying Hairston's claims are adequately laid out in the court's prior Memorandum Opinion. (Mem. Op. at 1–4, Aug. 24, 2023 [ECF No. 16].) Because Nilit's present motion to dismiss does not rely on any of Hairston's factual allegations, they need not be reiterated.

As it relates to the present motion, the parties agree that Hairston filed a Charge of Discrimination with the EEOC on or about October 4, 2022, alleging that discrimination last occurred on September 16, 2022. The EEOC opened an investigation at that time and assigned Hairston's case EEOC No. 438-2023-00014. On May 5, 2023, the EEOC issued to Hairston a "Dismissal and Notice of Rights," commonly referred to as a "Right-to-Sue Letter." (Am. Compl. Ex. 2.) Hairston filed suit in this court the next day.

After being served, Nilit filed a motion to dismiss challenging Hairston's state-law claim of discrimination. Because Hairston did not receive a right-to-sue letter from the VOCR on her *state-law* claims, the court granted Nilit's motion but gave Hairston the opportunity to

request the necessary documentation from the VOCR and file an amended complaint. (*See* Mem. Op. at 8.)

Plaintiff requested a right to sue letter from the VOCR, which the VOCR issued her on August 7, 2023. The notice referenced the VOCR's file number, 23-N0182, as well as the EEOC file number for the charge Hairston initiated with that agency on October 4, 2022— EEOC No. 438-2023-00014. (*See* ECF No. 25-3.)

Hairston filed an amended complaint on October 3, 2023 (*see generally* Am. Compl.), and Nilit filed an Answer on October 24. (ECF No. 23.) On October 31, Nilit filed a second motion to dismiss Hairston's state-law claim. (ECF No. 24.) While it previously argued that Hairston never completed the state procedures, it now contends that she did not initiate them in a timely manner. Specifically, Nilit contends that the VOCR proceedings did not commence until Hairston requested the right-to-sue letter from that agency on August 4, 2023. Nilit thus asserts that Hairston's complaint to the VOCR was untimely under Virginia law because she was obliged to initiate proceeding within 300 days of the discrimination,[2] which she contends last occurred on September 16, 2022. *See* 1 Va. Admin. Code 45-20-30(E). Because August 4, 2023, is more than 300 days after the date she alleges that the last discriminatory act occurred, Nilit argues she is barred from asserting any state-law claims.

Nilit filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and contends that Hairston's alleged failure to initiate proceedings with the VOCR within 300 days

---

[2] The 300-day deadline applies when a complainant alleges "a violation of federal statutes governing discrimination in employment that also falls under" state law. 1 Va. Admin. Code 45-20-30(E). All other claims must be filed "not later than 180 days from the day upon which the alleged discriminatory practice occurred." *Id.* § 45-20-30(D).

deprives this court of subject-matter jurisdiction. In support of its motion, Nilit provided a copy of the VOCR's response to its FOIA request, as well as a copy of a Workshare Agreement ("WSA") between the EEOC and the VOCR.[3] Hairston opposes the motion, arguing that filing with the EEOC fulfilled her obligations to initiate proceedings with the VOCR. The matter has been fully briefed by the parties, and Nilit's motion is ripe for disposition.[4]

## II. STANDARD OF REVIEW

When a challenge to subject-matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject[-]matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* Dismissal under Rule 12(b)(1) is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

---

[3] The WSA that Nilit provided was in effect from October 1, 2020, until September 30, 2021. (*See* WSA ¶ VI.F [ECF No. 25-2].) Although it was not operative at the time Hairston filed her charge with the EEOC on October 4, 2022, because Nilit relies on the WSA in support of its argument and Hairston does not appear to take issue with it, the court assumes that an identical WSA was operative at the time Hairston filed her charge.

[4] Although Nilit requested oral argument on its motion, after review of the briefs, evidence, and applicable law, the court finds that oral argument will not aid in deciding the discrete issues before it.

### III. ANALYSIS

As an initial matter, Hairston contends that, in light of the Supreme Court's holding in *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850 (2019), the exhaustion of administrative remedies is not a jurisdictional prerequisite to suit, but rather a mandatory claims-processing rule that the court must enforce if raised. Nilit counters that *Davis* only applies to actions under Title VII, and that Virginia law still treats the exhaustion of administrative remedies before the VOCR as a jurisdictional prerequisite. *See, e.g.*, *Parikh-Chopra v. Strategic Mgm't Servs., LLC*, Case No. CL 2021-0003051, 2021 WL 9918463, at *4 (Va. Cir. Ct. Dec. 9, 2021) (unpublished).

The court is dubious that Virginia courts treat the exhaustion of administrative remedies as a jurisdictional imperative; rather, as noted in cases cited by Nilit, it is treated as a "procedural default," which is more akin to a claims-processing rule. *See id.* ("A demurrer does not consider whether Chopra exhausted her administrative remedies. . . . A procedural default does not affect the merits of a claim of discrimination, it simply precludes the plaintiff from suing on a claim that had not been previously disclosed."). But ultimately, whether the court treats this as a motion under Rule 12(b)(1) or converts it to a motion for judgment on the pleadings under Rule 12(c), the analysis—and conclusion—are the same.

The Virginia Human Rights Act ("VHRA")—Virginia's analogue to Title VII—prohibits employment discrimination. And like Title VII requires exhaustion with the EEOC, the VHRA requires exhaustion of available remedies with the VOCR prior to filing suit. *Compare* 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1), *with* Va. Code Ann. § 2.2-3907. After receiving a charge, the agencies must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b); Va. Code Ann. § 2.2-3907(B). "A complainant is generally entitled to a right-to-

sue notice from the agency with which the complaint was filed 180 days after filing." *Tattrie v. CEI-Roanoke, LLC*, No. 7:23-cv-079, 2023 WL 4186383, at *2 (W.D. Va. June 26, 2023) (citing 42 U.S.C. § 2000e-5(f)(1); Va. Code Ann. § 2.2-3907(H); 1 Va. Admin. Code § 45-20-87). A party must receive a right-to-sue letter from the EEOC to pursue federal claims, and it must receive a separate right-to-sue from the VOCR to pursue state-law claims. (*See* Mem. Op. at 6–7.)

Nilit contends that Hairston was required to file separately with the VOCR in order to initiate proceedings with that agency and that filing with the EEOC did not initiate VOCR proceedings—even though the VOCR provided her with a right-to-sue notice on request. In support of this argument, Nilit cites to the WSA entered into by the EEOC and VOCR. Of note, Nilit only makes passing reference to what is, in the court's mind, dispositive of this issue:

> In order to facilitate the assertion of employment rights, the EEOC and the [VOCR] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. **The EEOC's receipt of charges on the [VOCR]'s behalf will automatically initiate the proceedings of both the EEOC and the [VOCR] for purposes of Section 706(c) and (e)(1) of Title VII.**

(WSA ¶ II.A.) By its plain terms, then, the WSA establishes that filing a charge of discrimination with the EEOC "automatically initiate[d]" proceedings with the VOCR.[5] Because Hairston presented her charge to the EEOC, who is the VOCR's "agent for the

---

[5] Nilit argues that the WSA requires that the VOCR "initially process . . . [a]ll charges that allege more than one basis of discrimination where at least one basis is not covered by the law administered by the EEOC but is covered by the [VOCR] . . . ." (WSA ¶ III.A.2.) That's plainly correct, but that step occurs *after* receipt and initiation of the charge—which the VOCR designated the EEOC as its agent to do.

purpose of receiving . . . charges," Hairston fulfilled her statutory obligation to initiate proceedings with that agency.[6] *Accord Davis*, 139 S. Ct. at 1846 ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other."). Moreover, when Hairston requested a right-to-sue letter from the VOCR, it immediately issued her one. "The receipt of [a] right to sue notice standing alone is a sufficient allegation of [a party's] exhaustion of her administrative remedies and satisfaction of the statutory prerequisite to filing a lawsuit." *Parikh-Chopra*, 2021 WL 9918463, at *4; *see also Wojcicki v. Aiken Tech. College*, 360 F. App'x 484, 488 (4th Cir. 2010) (indicating that the receipt of a right-to-sue letter is evidence that administrative remedies were exhausted).

Nilit's argument, then, must be premised on the VOCR's response to its FOIA request, which does not indicate that the VOCR opened a file on Hairston's charges until she requested a right-to-sue letter in August 2023 or, importantly, ever notified Nilit that it had received such a charge. That may very well be so, or perhaps the VOCR's record-keeping is woefully insufficient. But regardless of what the VOCR's records suggest, under the terms of the WSA, Hairston fulfilled her timely initiation obligation. *Cf. Tattrie*, 2023 WL 4186383, at *3 (noting that the filing with the EEOC initiated proceedings with the VOCR).

This conclusion is buttressed by three other facts that Nilit overlooks. First, Hairston's charge of discrimination, filed with the EEOC, is replete with references to alleged violations of state law, and she expressly requested that her charge be dual filed with the VOCR. (*See*

---

[6] Hairston's receipt of the right-to-sue notice establishes her exhaustion of that process.

Am. Compl. Ex. 1.) Second, the right-to-sue letter that the VOCR issued to Hairston expressly referenced the EEOC charge number associated with Hairston's October 4, 2022 filing, indicating that it was *that* charge—not one Nilit contends was initiated in August 2023—that was being terminated. And third, the EEOC *lacks authority* to investigate a claim until proceedings have been initiated with the state agency and been pending there for 60 days. *See* 42 U.S.C. 2000e-5(c). While the WSA operates to permit the EEOC to begin its investigation without waiting for the 60 days to elapse, *see Moss v. Saja Rest. Grp., LLC*, No. 5:22-cv-00014, 2023 WL 3034605, at *11 n.12 (W.D. Va. Apr. 21, 2023), the EEOC's investigation and issuance of a right-to-sue letter are strong indicia—if not dispositive of the fact—that the EEOC believed it had the authority to investigate Hairston's claim, meaning that it (like Hairston) had every reason to believe that Hairston's filing initiated a charge with the VOCR.

This conclusion is also supported by countless other courts that have considered this issue in related settings.[7] In *Puryear v. County of Roanoke*, the Fourth Circuit held that, "under the express terms of the WSA, a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the [VOCR] and the EEOC." 214 F.3d 514, 519 (4th Cir. 2000). In *Morris v. Waste Management of Virginia*, the Eastern District held that filing with the EEOC initiated proceedings with the VOCR when the claimant signed a form that contained the pre-printed statement, "I want this charge filed with both the EEOC and the State or local agency, if any." 71 F. Supp. 2d 537, 540 (E.D. Va. 1999). In *Barrett v. Applied Radiant Energy*

---

[7] Most of the cases deal with the jurisdiction of the EEOC to begin investigating claims, as Title VII does not permit the EEOC to investigate "alleged unlawful employment practice[s] occurring in a State . . . which has a State or local law prohibiting the unlawful employment practice[s] alleged." 42 U.S.C. § 2000e-5(c). But the dispositive questions in those cases are all variations of the dispositive question here: Does a unitary filing with the EEOC operate to initiate state proceedings with the VOCR?

- 8 -

*Corp.*, Judge Moon held that a plaintiff had initiated state proceedings even though he *failed* to check a box indicating that he wanted his charge filed with the relevant state agency. 70 F. Supp. 2d 644, 650 (W.D. Va. 1999), *vacated in part on other grounds*, 240 F.3d 262 (4th Cir. 2001). And in *Bolinsky v. Carter Machinery Co., Inc.*, Judge Jones reached a similar conclusion, finding that state proceedings had been initiated even though the plaintiff did not reference state law in his charge of discrimination. 69 F. Supp. 2d 842, 847–48 (W.D. Va. 1999); *see also Dew v. Nabisco, Inc.*, No. 3:99CV353, 1999 WL 33228565, at *4 (E.D. Va. Oct. 4, 1999) (noting that the parties conceded that, "as a result of the [Workshare] Agreement's provisions for dual filing, state administrative proceedings were commenced at the time the plaintiffs filed their claims with the EEOC"); *Nash v. D.S. Nash Constr. Co.*, 70 F. Supp. 2d 639, 642 (W.D. Va. 1999) (analyzing an identically worded workshare agreement between the EEOC and the VOCR); *Capps v. City of Lynchburg*, 67 F. Supp. 2d 589, 592–94 (W.D. Va. 1999) (finding that a single charge with the EEOC is sufficient to initiate state proceedings under an identically worded WSA); *Flippo v. Am. Home Products. Corp.*, 59 F. Supp. 2d 572, 576–78 (E.D. Va. 1999) (reaching similar conclusion); *Grimes v. Canadian Am. Transp., C.A.T. (U.S.)*, 72 F. Supp. 2d 629, 632 (W.D. Va. 1999) (finding that a filing with the EEOC is "a sufficient filing with the [VOCR]").

Nilit attempts to avoid this self-evident conclusion by highlighting several steps in the exhaustion process that it says were not performed. It correctly notes that the VHRA requires that the VOCR "shall timely serve a charge on the respondent," and that the VOCR "shall conduct an investigation sufficient to determine whether there is a reasonable cause to believe the alleged discrimination occurred." Va. Code Ann. §§ 2.2-3907(B), (D). But these mandatory

steps are required of the VOCR; they are not required of Hairston. If the VOCR failed to perform its statutory duties, that failure does not act to bar Hairston from this court. Surely, the VOCR cannot unilaterally thwart a claimant's right to seek redress for alleged discrimination by simply sitting on its hands. Such agency inaction violates the letter and spirit of the law and is antithetical to the administration of justice. *See Puryear*, 214 F.3d at 522 (noting that Title VII and the VHRA are remedial statutes); Va. Code Ann. § 2.2-3902 (stating that the provisions of the VHRA "shall be construed liberally for the accomplishment of its policies"). And this court will not countenance Nilit's argument that the VOCR's inefficiency bars Hairston from court. Hairston performed every step required of her, and her claim is properly before this court.

## IV.   CONCLUSION

Because Hairston plainly complied with the requirements to initiate and terminate her charge with the VOCR, Nilit's motion to dismiss will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 20th day of November, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE